RAMONA MUÑOZ VDA. DE ALONSO, demandante y apelada, *v.* SOCIEDAD AGRÍCOLA DE RÍO PIEDRAS, demandada y apelante.

Núm. 8304.—*Sometido:* Junio 19, 1941. *Resuelto:* Julio 29, 1941.

*Monserrat, de la Haba & Monserrat,* abogados de la apelante; *Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de la apelada.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Este es un procedimiento sobre sentencia declaratoria. Entre demandante y demandada surgió una discrepancia en la interpretación de una cláusula de un contrato que celebraron y la demandante acudió a las cortes de acuerdo con la Ley núm. 47 de 1931, pág. 379, relativa a Sentencias y Decretos Declaratorios y para hacer uniforme la legislación sobre la materia, una de cuyas disposiciones, la contenida en su sección doce, dice:

"Sección 12.—La presente, por su naturaleza, es una ley de remedios; y su propósito el de autorizar la determinación de derechos, estados, y otras relaciones jurídicas, y conceder remedios contra la incertidumbre o inseguridad de tales derechos, estados y otras relaciones jurídicas; y deberá ser liberalmente interpretada y aplicada."

En febrero 26, 1938, por escritura pública la demandante arrendó al Sindicato Reorganización Vannina del que es sucesora la demandada, dos fincas rústicas situadas en Río Piedras, una de 165 cuerdas y otra de 121, por término de diez años, un mes y veinte días la primera, y de diez años veinte días la segunda, contados a partir de mayo 10 y junio 10, 1937, respectivamente, a cuyas fechas se acordó retrotraer el contrato.

El canon de arrendamiento se fijó en $1,725 anuales para la finca de 165 cuerdas y en $1,275 anuales para la de 121, acordándose además que:

"El canon aquí antes indicado o fijado para esas fincas regirá así hasta tanto se mantenga el actual sistema de cuotas, aclarándose que tan pronto cese en Puerto Rico el sistema de cuotas actualmente en vigor, *o se fije una cuota no menor de la producción de azúcar en Puerto Rico, antes de empezar a regir la restricción, el canon de arrendamiento se elevará a tres mil seiscientos dólares anuales por ambas parcelas,* desde la fecha en que cese el citado sistema de cuotas o se asigne un aumento en la forma arriba estipulada." (Itálicas nuestras.)

Esa es la cláusula cuya aplicación en la práctica motivó la divergencia de criterio que llevó a la demandante a recurrir al tribunal que la interpretó como sigue:

"...La frase 'antes de empezar a regir la restricción' no puede referirse sino a la producción de azúcar en Puerto Rico cuando no existía restricción.

"El adverbio 'antes' denota prioridad o preferencia, prioridad de tiempo o lugar, y siendo ello así, no puede interpretarse que signifique el preciso momento en que ocurre un hecho. Cuando decimos 'antes de ayer', no es ayer ni es hoy. De suerte que, al convenir las partes que el canon convenido se elevaría a $3,600 tan pronto se fijase una cuota no menor que la producción de azúcar en Puerto Rico antes de empezar a regir la restricción, no podían referirse a la producción de azúcar en el preciso momento que entró en vigor la restricción, y sí a aquella producción anterior al momento de aplicarse la restricción."

Y como de la evidencia y de las admisiones de la demandada apareciera a su juicio que "el sistema de cuotas empezó a regir el día 1 de enero del año 1934, que la producción de azúcar durante el año anterior a la implantación de dicho sistema (1933) fué de 816,337 toneladas, y que las cuotas fijadas para los años 1938, 1939 y 1940 permitieron una producción de azúcar mayor a la del año 1933," resolvió que "la demandante tiene derecho a recibir el canon de $3,600 anuales, por haber sido la producción permitida a virtud de la cuota fijada para los años en que ha estado en vigor al referido contrato mayor a la producción de azúcar antes de establecerse dicho sistema en Puerto Rico."

No conforme la demandada interpuso el presente recurso de apelación. Alega que la interpretación de la corte es contraria a lo que en la realidad fué pactado. Y argumentando su error se expresa, en parte, como sigue:

"...La corte inferior debió indagar hasta qué punto concuerda el sentido aparentemente claro de todas las palabras usadas en la redacción de dicha cláusula con la intención de los contratantes,....

"¿Se preguntó acaso la corte inferior cuál era el objeto práctico de esa cláusula? ¿Tuvo en cuenta el hecho de que dicho contrato se otorgó en el año 1938 cuando ya estaba establecido el sistema de

cuotas, cuando ya se conocía exactamente cuál había sido la producción anterior a su implantación? Si las partes tenían conocimiento de que la producción del año 1933 era menor que la cuota asignada para el año 1938, fecha en que se otorgó el contrato, ¿qué necesidad, cuál fué el objeto, qué fin práctico.tenía la cláusula cuarta del contrato? ¿Cómo es posible que a los dos años de otorgado el contrato, durante cuyo plazo las partes interpretaron su intención y voluntad, pueda ahora sostenerse que ésa no fué la intención de las partes? ¿No ha sido ésta la interpretación auténtica de dicho contrato? No podemos admitir. que la intención y voluntad de las partes fué la de establecer una condición que no habría de surtir efecto práctico o legal alguno. En ese caso ¿no hubiera sido más lógico haber estipulado de una vez y para siempre que el canon de arrendamiento sería de $300 mensuales?''

El problema no es de fácil solución. Interpretada la cláusula de acuerdo con sus términos expresos, no puede llegarse a otra conclusión que a la que llegó la corte sentenciadora. ''Antes'' no puede referirse sino a la producción de azúcar cuando no existía la restricción.

Sin embargo esa interpretación deja en la mente del juzgador por lo menos la duda de si lo resuelto pudo ser la intención de las partes contratantes, ya que equivale a concluir que lo pactado no tuvo razón de ser.

Si cuando se celebró el contrato ya se había fijado una cuota mayor que la producción de azúcar en el año anterior a la restricción o sea a la implantación del sistema de cuotas, ¿a qué referirse a un acontecimiento a ocurrir cuando ya había ocurrido?

A los fines de dar vida a la cláusula pensamos en que tal vez podría interpretarse en el sentido de tomar como base no la producción del año inmediatamente anterior si que la del promedio de los años 1931, 1932 y 1933, que según las Regulaciones Generales de la Cuota Azucarera, prescritas por el Secretario de Agricultura bajo la Ley de Ajuste Agrícola, se tomaron en consideración para fijar la cuota al comenzar a regir el sistema, pero nada se lograría porque dicho promedio de producción resulta siempre inferior a las cuotas, a la fecha del contrato.

Para que la teoría de la parte demandada apelante pudiera prevalecer tendría que aceptarse que "antes de empezar a regir la restricción" quiere decir "en el momento en que la misma se hizo efectiva"—carta a la demandante, página 30 de la transcripción—dando a "momento" la significación de "año", esto es, del año 1934 en que la producción fué mayor que la cuota de 1938, o prescindirse del año 1933 y aceptarse el 1932 en que la producción fué de 992,432 toneladas, también mayor que la indicada cuota.

Esa interpretación sería contraria a la letra del contrato y, aparte de la consideración de que interpretando éste según su letra la cláusula no tendría objeto, lo que es contrario a la lógica de las transacciones entre los hombres, nada encontramos en la prueba practicada que revele que la alegada por la apelante fuera la intención de las partes contratantes. Y siendo ello así, no es posible acceder a lo solicitado.

En cuanto a la interpretación que se dice dada al contrato por las partes mismas y el alegado conocimiento que ambas tenían de la situación azucarera antes y después del régimen de cuotas, bastará decir que ese alegado conocimiento no resulta de los autos que fuera pleno en cuanto a la demandante, pudiendo concluirse que si ella aceptó al principio como canon del arrendamiento una cantidad menor a la que tenía derecho, fué porque no estaba familiarizada con la situación. Sus actos en ese sentido no constituyen, pues, una interpretación auténtica y deliberada de que lo que ella aceptó en principio fuera lo realmente pactado.

Siendo ésas las circunstancias que concurren, las dudas permanecen, pero ante la carencia de hechos claros que permitan concluir que la verdadera intención de las partes, prescindiendo del significado literal de los términos del contrato, es la que sostiene la apelante, a dicho significado literal debemos atenernos.

*Debe el recurso declararse sin lugar y confirmarse la sentencia apelada.*